UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | |
|---|---|
| CALEB MORGAN, ) <br> ) <br> Plaintiff, ) <br> ) <br> V. ) <br> ) <br> HSBC MORTGAGE SERVICES, INC., ) <br> ) <br> Defendants. ) <br> ) <br> ) | Civil No. 11-204-GFVT <br><br> **MEMORANDUM OPINION** <br> **&** <br> **ORDER** |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Caleb Morgan alleges that the HSBC, mortgagee of his personal residence, harmed his credit rating and his personal reputation when it misapplied his mortgage payments and inappropriately reported a deficiency to the credit rating agencies. [R. 1-1]. Morgan claims that HSBC's actions give rise to liability under the Equal Credit Opportunity Act and Fair Credit Reporting Act, as well as the state law torts of negligence and outrage. HSBC moved for dismissal under Federal Rule of Civil Procedure 12(b)(6) [R. 4], but because of the complaint's vagueness, the Court denied HSBC's motion and instead ordered Morgan to amend his complaint to provide a more definite statement. [R. 8]. Morgan has filed an amended complaint [R. 9], and it is now sufficiently clear that dismissal of each claim is appropriate. As such, HSBC's renewed motion to dismiss [R. 10] is granted.

**I**

Caleb Morgan borrowed money from HSBC. The loan was secured by a mortgage on his

home requiring payments of $506.09. In 2009, HSBC began collecting an additional escrow amount of $142.54 per month from Morgan to cover a deficiency in his escrow account, which occurred when HSBC made property tax payments on behalf of Morgan. Morgan alleges that after he paid the deficiency, HSBC continued to apply his $506.09 monthly payment first to the additional escrow amount of $142.54 and then applied the remaining $353.55 to his monthly mortgage obligation amount, causing his payments to be insufficient. As a result, Morgan says he incurred inappropriate late fees, but more relevant to his complaint, he claims that HSBC reported his account as delinquent to the three major credit reporting agencies. Morgan claims that HSBC did this despite the fact that he had disputed the deficiencies with HSBC.

Morgan filed suit in state court on June 22, 2011. HSBC removed the action to this Court on July 21, 2011. [R. 1]. On July 28, HSBC filed its first motion to dismiss [R. 4]. It was not until October 24 that Morgan filed a response, which the Court struck pursuant to Local Rule 7.1(c). However, the Court did not at that time dismiss the complaint, but invoked Federal Rule of Civil Procedure 12(e), requiring a more definite statement when the pleading is "so vague or ambiguous that the party cannot reasonably prepare a response." Fed.R.Civ.P. 12(e).

In an attempt to more clearly articulate his claims, Morgan filed his amended complaint on March 14, 2012. [R. 9]. In this complaint Morgan claims HSBC's errant reporting of his payment delinquency to the credit reporting agencies gives rise to federal claims under the Equal Credit Opportunity Act and Fair Credit Reporting Act as well as the state claims for negligence and outrage. HSBC countered by raising afresh its motion to dismiss each of these claims. [R. 10]. On October 22, 2012, over six months after the motion to dismiss was filed, Morgan filed his response. [R. 11]. HSBC submitted its reply, but also filed a motion to strike Morgan's response pursuant to Local Rule 7.1(c).

As a preliminary matter it should be noted that "[a] party opposing a motion must file a response memorandum within twenty-one (21) days of service of the motion. Failure to timely respond to a motion may be grounds for granting the motion." LR 7.1(c). The Court previously struck Morgan's prior late response, and as the response to this renewed motion is substantially later, and Morgan again failed to seek an extension nor proffered an explanation for his tardiness, the Court shall once again grant HSBC's motion to strike Morgan's response. [R. 14]. Accordingly, any arguments raised in Morgan's response [R. 11], as well as those arguments raised in HSBC's reply [R. 13] will not be considered by the Court in ruling on HSBC's motion for dismissal, which is now ripe for review by this Court.

## II

### A

HSBC argues, pursuant to Federal Rule of Civil Procedure 12(b)(6), that each of the theories for relief contained in the amended complaint fails to state a claim upon which relief may be granted and must be dismissed. [R. 10].

In reviewing a Rule 12(b)(6) motion, the Court "construe[s] the complaint in the light most favorable to the plaintiff, accept[s] its allegations as true, and draw[s] all inferences in favor of the plaintiff." *DirecTV, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007) (citation omitted). The Court, however, "need not accept as true legal conclusions or unwarranted factual inferences." *Id.* (quoting *Gregory v. Shelby County*, 220 F.3d 433, 446 (6th Cir. 2000)). Recently, the Supreme Court explained that in order "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). *See also Courier v. Alcoa Wheel & Forged*

*Products*, 577 F.3d 625, 629 (6th Cir. 2009).

Stated otherwise, it is not enough for a claim to be merely possible; it must also be "plausible." *See Courier*, 577 F.3d at 630. According to the Court, "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "Plausibility" then, is the benchmark the factual allegations contained in Plaintiffs' first amended complaint must meet in order to defeat HSBC's motion to dismiss.

As recognized in the previous Order, the new plausibility standard announced in *Twombly* and *Iqbal* is not in disagreement with the longstanding practice of notice pleading. As Douglas Smith argued, "[t]he plausibility test is also consistent with the idea of notice pleading. Absent logically coherent allegations, it is difficult to see how a defendant can be put on 'notice' regarding the substance of a plaintiff's claims." Smith, Douglas G., *The Evolution of a New Pleading Standard: Ashcroft v. Iqbal*, 88 Or. L. Rev. 1053, 1073 (2009). The plausibility standard is "merely a logical extension of the notice requirement." *Id*. Therefore, one issue a court should consider when scrutinizing a complaint is "whether [a defendant] ha[s] adequate notice of the charges it [is] defending." *Carter v. Ford Motor Co.*, 561 F.3d 562, 568 (6th Cir. 2009).

**B**

Morgan first purports to make a federal claim under the Equal Credit Opportunity Act ("ECOA"), 15 U.S.C. § 1961, *et seq*., The ECOA prohibits creditors from discriminating against any credit applicant "with respect to any aspect of a credit transaction…on the basis of race, color, religion, national origin, sex, or marital status." 15 U.S.C. § 1691(a)(1). "The purpose of the ECOA is to eradicate credit discrimination waged against women, especially married women

4

whom creditors have traditionally refused to consider for individual credit." *Mays v. Buckeye Rural Elec. Co-op., Inc.*, 277 F.3d 873, 876 (6th Cir. 2002) (citing *Anderson v. United Fin. Co.*, 666 F.2d 1274, 1277 (9th Cir. 1982).

    Aside from twice mentioning its name, Morgan's complaint has no relationship to the Equal Credit Opportunity Act. Morgan does not cite a particular statutory section under which he is bringing his claim, and he alleges no facts that he was discriminated against in any way by HSBC. Even if the facts are as Morgan suggests and HSBC has improperly reported inaccurate account deficiencies to credit rating agencies, thereby adversely impacting his credit rating, Morgan would still not have a claim under the ECOA. Essentially, Morgan makes the bare claim that "HSBC, its Agents, Assigns and employees have violated the Equal Credit Opportunity Act," [R. 9 at 4], which gives HSBC no notice of the charges it is defending against and constitutes nothing more than an unsupported legal conclusion that the Court need not, and does not, accept as true. As a result, Morgan's ECOA claim is properly dismissed.

**C**

    The facts of Morgan's amended complaint are more applicable to the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.*, which Morgan also specifically cites in his complaint. Congress enacted the FCRA in 1968 in order to promote, "efficiency in the Nation's banking system and to protect consumer privacy." 15 U.S.C. § 1681. More specifically, the Sixth Circuit has noted that "the FCRA is aimed at protecting consumers from inaccurate information in consumer reports and at the establishment for credit reporting procedures that utilize correct, relevant and up-to-date information in a confidential and responsible manner." *Jones v. Federated Financial Reserve Corp.*, 144 F.3d 961, 965 (6th Cir. 1998).

    Morgan's claim against HSBC is evaluated under 15 U.S.C. § 1681s-2, which sets forth

5

the obligations of a furnisher to a consumer. There are essentially two components to this provision. First, subsection (a) of this statutory section sets forth a "duty of furnishers of information to provide accurate information." §1681s-2(a). However, the statute expressly states that the requirements of subsection (a) are only enforceable by government officials. §1681s-2(d). As such, courts have readily recognized that no private cause of action exists under §1681s-2(a) for parties like Morgan to raise a claim against a furnisher such as HSBC. *Stafford v. Cross Country Bank*, 262 F.Supp. 2d 766, 783 (W.D.Ky 2003) (collecting cases); *see also Purcell v. Bank of America*, 659 F.3d 622, 623 (7th Cir. 2011).

The second component is subsection (b), which sets forth the "duties of furnishers of information upon notice of dispute." §1681s-2(b). Subsection (b) is not similarly limited to enforcement by government agencies, a difference which suggests that Congress did intend a private right of action under this component. *See Stafford*, 262 F.Supp. at 783. However, the duties under this section are contingent upon the furnisher of information "receiving notice *pursuant to section 1681i(a)(2)* of this title of a dispute with regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency." §1681s-2(b)(emphasis added). "This means that a furnisher of credit information…has no responsibility to investigate a credit dispute until after it receives notice of a dispute *from a consumer reporting agency*." *Stafford*, 262 F.Supp. at 784 (emphasis added)(citing §1681i(a)(2)). Morgan's complaint alleges that HSBC was "advised *by the Plaintiff* that it was improperly applying the mortgage payment…and that such application was in error and should cease and that the Defendant should stop reporting inaccurate information to credit reporting agencies and that such inaccuracies should be corrected so as not to damage the Plaintiff credit history/score." [R. 9]. However, as numerous courts, including district courts within this circuit, have recognized,

"Under the statutory language, notification from the consumer is not enough." *Id*. (collecting cases); *see also Yaldu v. Bank of America Corp.*, 700 F.Supp.2d 832, 843 (E.D.Mich 2012).

Accepting the facts of Morgan's complaint as true, the duties imposed on HSBC as a furnisher were never triggered. Though Morgan might have alerted HSBC of his dispute, no facts are alleged that the furnisher ever received notice of the dispute from a credit reporting agency, which is a necessary prerequisite under §1681s-2(b). Moreover, his pleadings in this court suggest these facts are not alleged because Morgan did not alert the credit reporting agencies of the dispute, but contacted HSBC directly.[1] Therefore, Morgan is unable to raise a claim under §1681s-2 for which relief can be granted, and his Fair Credit Reporting Act claim is therefore rightfully dismissed.

## D

Morgan also raises two state law claims for negligence and outrage. HSBC argues that these claims are preempted by the Fair Credit Reporting Act 15 U.S.C. § 1698t(b)(1)(F). The Court agrees.

It has been well documented that the FCRA contains two overlapping and potentially contradictory preemption provisions. "The tension between these two provisions…results from the fact that §1681(h)(e) permits state law tort claims, but requires a higher standard of proof for those in the nature of defamation, slander, or invasion of privacy, while §1698t(b)(1)(F) prohibits all state law claims covered by §1681s-2." *Yaldu*, 700 F.Supp.2d at 843 (quoting *Stafford*, 262 F.Supp. at 785).

---

[1] Though HSBC has moved to strike Morgan's very late response [R. 11], and the Court has not relied upon it in its holding, it should be noted that in this filing, consistent with his complaint, Morgan does not dispute that he contacted HSBC directly rather than the credit rating agencies. Instead he argues, without authority, that this should be acceptable under the statute. The Court will not consider that argument, but notes the additional confirmation that Morgan failed to satisfy the dictates of §1681s-2(b).

While these two provisions might seem contradictory on the face of the statute, Judge Easterbook of the Seventh Circuit Court of Appeals recently clarified how the two provisions operate together.

> [W]e do not perceive any inconsistency between the two statutes. Section 1681h(e) preempts some state claims that could arise out of reports to credit agencies; § 1681t(b)(1)(F) preempts more of these claims. Section 1681h(e) does not create a *right* to recover for wilfully false reports; it just says that a particular paragraph does not preempt claims of that stripe. Section 1681h(e) was enacted in 1970. Twenty-six years later, in 1996, Congress added § 1681t(b)(1)(F) to the United States Code. The same legislation also added § 1681s–2. The extra federal remedy in § 1681s–2 was accompanied by extra preemption in § 1681t(b)(1)(F), in order to implement the new plan under which reporting to credit agencies would be supervised by state and federal administrative agencies rather than judges. Reading the earlier statute, § 1681h(e), to defeat the later-enacted system in § 1681s–2 and § 1681t(b)(1)(F), would contradict fundamental norms of statutory interpretation.
>
> Our point is not that § 1681t(b)(1)(F) repeals § 1681h(e) by implication. It is that the statutes are compatible: the first-enacted statute preempts some state regulation of reports to credit agencies, and the second-enacted statute preempts more. There is no more conflict between these laws than there would be between a 1970 statute setting a speed limit of 60 for all roads in national parks and a 1996 statute setting a speed limit of 55. It is easy to comply with both: don't drive more than 55 miles per hour. Just as the later statute lowers the speed limit without repealing the first (which means that, if the second statute should be repealed, the speed limit would rise to 60 rather than vanishing), so § 1681t(b)(1)(F) reduces the scope of state regulation without repealing any other law. This understanding does not vitiate the final words of § 1681h(e), because there are exceptions to § 1681t(b)(1)(F). When it drops out, § 1681h(e) remains. But, even if our understanding creates some surplusage, courts must do what is essential if the more recent enactment is to operate as designed.

*Purcell*, 659 F. 3d at 625.  At least one district court in this circuit that has considered this issue has reached a similar conclusion.  See *Stafford*, 262 F.Supp. at 785-786.  Therefore, the Court must first consider whether Morgan's claims are preempted by §1698t(b)(1)(F), with the secondary provision of §1681(h)(e) only factoring in the decision if the former does not apply.

Section 1698t(b)(1)(F) states that, "No requirement or prohibition may be imposed under

the laws of any State (1) with respect to any subject matter regulated under…(F) section 1681s-2 of this title, relating to the responsibilities of persons who furnish information to consumer reporting agencies." §1698t(b)(1)(F).  According to the amended complaint, Morgan's negligence claim is based on the fact that "after the Defendant deducted the $142.54 from the mortgage payment, the mortgage payment appeared deficient and unpaid and was reported as such by the Defendant to the three major credit reporting agencies." [R. 9 at 3].  It was this conduct by HSBC that Morgan claims was negligent.  The outrage claim, though plead insufficiently, seems to be based on the same conduct.  In the words of Morgan, the Fair Credit Reporting Act "prohibits the Defendant, as lender and furnisher of information from reporting inaccurate information to the credit reporting agencies and that the inaccuracies should be corrected so as not to damage the plaintiff credit history/score." [R. 9 at 3].  Therefore, it is clear from the amended complaint that Morgan's state law claims for negligence and outrage are based on the allegedly inaccurate reporting of the furnisher, HSBC, which is the exact type of conduct regulated under §1681s-2.  As a result, both of Morgan's claims are preempted by §1698t(b)(1)(F), making dismissal appropriate.

      Even if not preempted, it is likely that Morgan's state law claims would still meet the same fate.  To recover for negligence in Kentucky, a plaintiff must show that the defendant owed the plaintiff a duty; that the defendant breached that duty; and that the breach caused an injury to the plaintiff.  *Illinois Cent. R.R. v . Vincent*, 412 S.W.2d 874, 875-876 (Ky. 1967).  Whether a defendant had a duty to the plaintiff is a question of law for the court, and without a duty there is no negligence.  *Pathways, Inc. v. Hammons*, 113 S.W.3d 85, 89 (Ky. 2003).  Kentucky courts have suggested that, "the failure to perform a contractual obligation typically does not give rise to a cause of action in tort," unless the plaintiff can show that the defendant had an independent

legal duty to act. *Mims v. Western-Southern Agency, Inc.*, 226 S.W.3d 833, 836 (Ky. Ct. App. 2007) (citing *Jones v. Hartford Life and Accident Ins. Co.*, 443 F.Supp.2d 3, 5 (D.D.C. 2006)).

As the relationship between HSBC and Morgan was contractual, the sustainability of Morgan's negligence claim against HSBC turns on whether a lender owes an independent duty of care to its borrower. *Jones*, 443 F.Supp.2d at 5. Kentucky law is clear that "except in special circumstances, a bank does not have a fiduciary relationship with its borrowers." *Layne v. Bank One Kentucky, N.A*, 395 F.3d 271, 281 (6th Cir. 2005) (citing *Sallee v. Fort Knox Nat'l Bank, N.A.*, 286 F.3d 878, 893). Further, as previously discussed, Morgan has not met the necessary perquisites to give rise to a duty under FCRA. Without an independent duty, Morgan would be unable to raise his state law negligence claim even if it were not preempted.

It is even more evident that Morgan's outrage claim would be dismissed if it were not preempted. In Kentucky, a prima facie case of outrage requires "1) the wrongdoer's conduct must be intentional or reckless; 2) the conduct must be outrageous and intolerable in that it offends against the generally accepted standards of decency and morality; 3) there must be a causal connection between the wrongdoer's conduct and the emotional distress; and 4) the emotional distress must be severe." *Stringer v. Wal-Mart Stores, Inc.*, 151 S.W.3d 781, 788 (Ky. 2010) (citing *Humana of Kentucky Inc. v. Seitz*, 796 S.W.2d 1, 2-3 (Ky. 1990). It is for the court to determine whether the defendant's conduct can be regarded as outrageous. *Id*. (citing RESTATEMENT (SECOND) OF TORTS § 46(1) cmt.d (1965). Kentucky courts have, "set a high threshold for IIED/outrage claims" and the conduct at issue must be, "a deviation from all reasonable bounds of decency." *Id*. (citing *Whittington v. Whittington*, Ky.App., 766 S.W.2d 73, 74 (Ky. Ct. App. 1969)).

First, it should be noted that the pleading of the outrage claim was insufficient in the first

complaint, and was left unimproved in the amended complaint. Morgan merely recites the elements of the outrage claim, which gives HSBC no notice of the charges it is defending against and constitutes nothing more than an unsupported legal conclusion that the Court need not, and does not, accept as true. Further, if the Court were to give Morgan it's most favorable inference as to the conduct that made up the outrage claim, it could only be that HSBC inaccurately reported his delinquency, adversely effecting his credit score. Accepting this as true, such conduct is certainly not desirable, but it does not deviate from all reasonable bounds of decency, and is a far cry for outrage. Thus, Morgan's claim for outrage is preempted, but even if it were not, it is insufficiently plead and is not plausible on its face.

### V

Accordingly, the Court hereby **ORDERS**:

1. HSBC's motion to dismiss [R. 10] is **GRANTED**;

2. HSBC's motion to strike [R. 14] is **GRANTED**, and Morgan's Response [R. 11] is **STRICKEN** from the record;

3. The Court will enter an appropriate **JUDGMENT**; and

4. This matter is **STRICKEN** from the active docket of this Court;

This 12th day of March, 2013.

Signed By:
*Gregory F. Van Tatenhove*
United States District Judge